IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA

v.  Criminal Action No. 5:09cr6

RICHARD ALLEN WILLIAMS,

      Defendant.

**Report and Recommendation that Motion to Suppress be Denied and Denying Motion to Enlarge Time to File Motions as Moot**

**I. Introduction**

**A. Background**

Defendant is the only defendant in a one count indictment alleging possession with intent to distribute oxycodone, plus a forfeiture allegation seeking forfeiture of $ 2,093 in United States currency.

**B. The motion**

Defendant's Motion to Suppress Evidence.[1]

**C. Recommendation**

I recommend that defendant's Motion to Suppress Evidence be denied because there was probable cause for the warrantless search of defendant's vehicle and the search was incident to a

---

[1] Dkt. No. 22

1

lawful arrest.

## II. Facts

On January 6, 2008, defendant, his girlfriend, Aimee Robosson, and his father, Wesley Williams, were shopping at Cabela's at the Cabela's exit on Interstate 70 in Ohio County, West Virginia. Because Cabela's had been experiencing losses in its camouflage section, including specifically, exchanger masks, Cabela's asset protection division was focused on the camouflage section.

Aaron Bonham, Michael Rock and Tom Weyrauch were working in the asset protection unit at the time defendant was shopping. Bonham and Weyrauch were operating the cameras and observed defendant pick up an exchanger mask and they began to follow him with a security camera. They observed defendant enter a fitting room with an exchanger mask. When Defendant exited the fitting room, Bonham and Weyrauch could not see the exchanger mask. Rock went to the fitting room immediately and found an empty exchanger mask package.

Bonham and Weyrauch continued watching defendant on the cameras. Defendant was with a female (Robosson) who was not suspected of shoplifting. Robosson and defendant proceeded through the checkout line separately. Bonham and Weyrauch watched the defendant checkout and did not see the exchanger mask. After defendant proceeded out the first door, defendant was stopped and detained by Rock and Weyrauch and taken to the asset protection unit office. Bonham testified that defendant called Robosson on his cell phone, advised her he had been detained and to get in the truck and leave. After confrontation by the persons in the asset protection unit that they had seen defendant enter the fitting room with the exchanger mask and leave without it and initial denials he had shoplifted the exchanger mask, defendant said he

had given the exchanger mask to Robosson. After further questioning, defendant pulled the exchanger mask from the front of his pants and gave it to Bonham. Rock believed that defendant had shoplifted the exchanger mask and nothing else.

Before defendant pulled the exchanger mask from the front of his pants, the asset protection unit had called the Ohio County Sheriff twice. First the sheriff had been called about the shoplifting of the exchanger mask and then called about a female, Robosson, leaving with the shoplifted merchandise.

About this time, Robosson had exited the store waiting for defendant. Defendant's father was standing outside smoking while Robosson waited for defendant whom she thought was right behind her. When the defendant did not appear, Robosson went inside to look for him. Robosson did not see the defendant so she went to the parking lot to pull the truck in front of the store to wait for defendant. Robosson then pulled the truck to the entrance and waited.

Meanwhile, Ohio County Sheriff's Deputy Chad Clatterbuck was dispatched to Cabela's and was advised by dispatch of the person detained for shoplifting and then that a female was leaving Cabela's with the stolen merchandise in a white Ford Explorer truck. As the deputy arrived he saw the white Explorer begin slowly to exit the front of the store. The deputy turned on his lights and the Explorer stopped. The deputy approached the truck.

The deputy asked Robosson for permission to search the truck. Robosson said it was not her truck and she would not give permission to search the truck. Defendant was brought to the truck and the deputy asked defendant for permission to search the truck. Defendant said yes but said he wanted to be present. At this time defendant, Robosson and defendant's father started talking loudly. The deputy became concerned that things would get out of control. The deputy

asked that defendant be taken back inside and the deputy called for backup.  Then defendant revoked his consent to the search if he could not be present.

A backup deputy arrived on the scene.  Defendant had been taken inside.  Robosson and Defendant's father were off to the side with the backup deputy.  Deputy Clatterbuck was not advised by anyone from Cabela's that the merchandise Cabela's believed stolen had been recovered.  Deputy Clatterbuck began to search the vehicle for stolen merchandise from Cabela's.  The Deputy found 526 oxycodone pills in a small compartment in the back seat area.  Subsequently the vehicle was towed, a search warrant was obtained and a further search pursuant to the warrant was conducted.

When asked what probable cause he believed he had for the warrantless search of the vehicle the deputy said that he (the deputy) was informed by Cabela's personnel that defendant said he had passed merchandise to Robosson and defendant had advised Robosson to leave.  These statements were confirmed to him by defendant when defendant said "Yes I told them that," in response to whether he said he had given stolen merchandise to Robosson.  The confirmation by defendant of statements given to Deputy Clatterbuck by a third-party is what the Deputy said led him to the belief that he had probable cause to search the vehicle.

Robosson testified, contrary to others, that the conversation between the defendant and her on his cell after defendant was detained for shoplifting, was defendant's instruction to her that he had been detained for shoplifting and it might be awhile.  Therefore, defendant suggested Robosson and his father should go get a cup of coffee.  Robosson also testified that as Rock left the premises, Rock said to this effect, if not verbatim, to nobody in particular: "I don't know why [defendant] is being detained.  We have recovered what he took."

4

## III. Defendant's Motion to Suppress

### A. Contentions of the Parties

Defendant contends that search of a vehicle incident to a lawful arrest is only permissible when 1) it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle and 2) when the person arrested is unsecured and within reaching distance of the passenger compartment at the time of the search. Defendant contends neither requirement was met by the deputy sheriff conducting the search of defendant's vehicle.

The government contends the deputy had a reasonable belief that evidence related to shoplifting was in the truck based upon two statements by the defendant: 1) defendant passed stolen merchandise to Robosson and 2) defendant instructed Robosson to leave while he was detained.

### B. Discussion

The Fourth Amendment of the United States Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." However, there are exceptions to the Fourth Amendment's warrant requirement. One of these exceptions is the 'search-incident-to-arrest' exception. The basic premise behind this exception is that the "police may search incident to arrest only the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" Arizona v. Gant, 129 S.Ct. 1710, 1714

(2009). A search is also justified when it is reasonable to believe that evidence from the crime that was committed "might be found in the vehicle." Id. See also: Thornton v. United States, 541 U.S. 615, 632 (2004).

The first prong of the exception is for the protection of the arresting officers and protection against the destruction of evidence. Therefore, if the suspect has been arrested, handcuffed or can not otherwise reach the vehicle to obtain a weapon or destroy evidence then a search of the vehicle without a warrant is not justified. Gant at 1719. However, the second prong of the exception deals with evidence related to the crime for which the arrestee has been detained. If a person has been stopped for a mere traffic violation, or any of numerous occasions in which evidence of the crime would not be found by searching the vehicle, a search without a warrant is not justified. Id. There are other circumstances, however, where the crime that has caused the arrest will justify a search of the vehicle for evidence of the crime. Id. For example, if a suspect has been arrested for suspicion of possession of illegal drugs and there is a reasonable possibility that the illegal drugs might be found in the vehicle then the police may conduct a search of that vehicle to discover possible evidence.

The main issue at hand in the case at bar is whether the Deputy had probable cause to search defendant's vehicle without a warrant but incident to his arrest. The defendant had been detained for shoplifting by Cabela's employees and the police were then called. The defendant stated to these employees that he did not have the stolen merchandise but had instead passed it on to Robosson who had already left the store. The defendant also made a call to Robosson while being detained. The exact content of this conversation is disputed, but the basic information relayed from defendant to Robosson was that he was being detained for shoplifting

and that she should leave the area. Robosson claims that the instructions were for her to "go get a cup of coffee and wait for him to be finished," but the recollection of the conversation by the Cabela's employees was something to the effect of "they got me for shoplifting, get out of here." Regardless of the exact content, it is clear that his instructions were for her to leave the premises. The Deputy was then informed by Cabela's employees, before his arrival on the scene, that the stolen merchandise was in Robosson's possession and that she was in a white Ford Explorer. When the officer arrived on the scene Robosson was located in defendant's vehicle and was slowly moving from the front of the store. Believing Robosson to possess the stolen merchandise, the Deputy pulled the vehicle over and asked for permission to search the vehicle and was denied.

The deputy then retrieved defendant from inside the store and asked him if he had told the employees that stolen merchandise had been passed on to Robosson. The defendant stated something to the effect of "yes, I told them that." The Deputy was never informed by Cabela's employees, or anyone else, what merchandise was suspected of being taken and that the all of the suspected stolen merchandise had been recovered. After again asking for permission to search the vehicle and being denied, the Deputy, fearing that the situation was getting out of control, ordered the defendant inside and called for a backup officer to come on scene. Once defendant had been detained inside the store and the backup officer arrived on scene to observe Robosson and the father of defendant, the Deputy began his search of the vehicle.

The defendant contends that because he was detained and there was no possibility of his accessing the vehicle at the time of the search that the search was unjustified. In reaching this conclusion, the defendant relies on the holding in <u>Gant</u> that "only when the arrestee is unsecured

and within reaching distance of the passenger compartment at the time of search." Id. at 1719. While the defendant is correct that he could not have accessed the vehicle at the time of search and, therefore, the safety of the officer and possible destruction of evidence were not factors, he fails to explain why the search would not be justified under the theory that it would have been reasonable for the Deputy to believe that evidence from the crime which defendant was arrested could have been found in the vehicle. The Gant Court states "we conclude that circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." Id. At 1714. The only information that the Deputy had at the time of the search was that defendant had allegedly passed on stolen merchandise to Robosson, which was confirmed by both defendant and Cabela's employees, and the fact that Robosson was located inside the defendant's vehicle when he arrived on scene. The Deputy had no information about what had been stolen, nor did he have any knowledge that all of the stolen merchandise had been recovered. Therefore, under the search-incident-to-arrest exception the Deputy did have probable cause to search the vehicle because he reasonably believed that evidence, specifically stolen Cabela's merchandise, might be located inside it.

### III. Recommendation

The undersigned recommends that Defendant's Motion to Supress be **DENIED** because Defendant has failed to show that there was not probable cause for the warrantless search of defendant's vehicle. Defendant's Motion for Extension of Time to File Pretrial Motions[2] is **DENIED** as moot.

---

[2] Dkt. No. 21

Within ten (10) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Judge Frederick P. Stamp, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984). The Clerk is directed to mail a copy of this Report and Recommendation to the defendant and counsel of record, as applicable.

DATED: June 23, 2009

        /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE